# IN THE COURT OF APPEALS OF IOWA

No. 20-0736
Filed August 5, 2020

IN THE INTEREST OF A.C.,
Minor Child,

J.C., Father,
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A father appeals the juvenile court decision terminating his parental rights. **AFFIRMED.**

Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Erin E. Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Schumacher, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DANILSON, Senior Judge.**

A father appeals the juvenile court decision terminating his parental rights. There is clear and convincing evidence in the record to support termination of the father's parental rights, and termination is in the child's best interests. We affirm the decision of the juvenile court.

## I.      Background Facts & Proceedings

J.C., father, and As.C., mother, are the parents of A.C., born in 2018. The parents have a history of problems with substance abuse. The child was removed from the mother's care immediately after birth because the mother used methamphetamine while pregnant and received no prenatal care. The mother named J.C. as a possible father of the child. J.C. tested positive for methamphetamine and marijuana.

On November 14, 2018, the child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). In December, J.C. was determined to be the father of the child. He again tested positive for methamphetamine and marijuana. At a visit in February 2019, a social worker found drug paraphernalia in his home. The father participated in an outpatient substance-abuse treatment program and was successfully discharged in April 2019. He also participated in individual therapy.

On April 24, the juvenile court determined the CINA proceedings should be extended for six months to give the father more time to work on reunification. About a month later, in May, the father provided a positive hair test for methamphetamine.

On July 3, the State filed a petition seeking to terminate the parents' rights. The father had another hair test in August that was positive for methamphetamine. After a hearing, the juvenile court entered an order on November 15 terminating the mother's parental rights. The court noted the father's recent progress with services and determined his parental rights should not be terminated at that time. The court stated:

> Father is specifically ordered to comply with all prior recommended services, including drug screens. Court finds Father has continued to use methamphetamine and orders him to **honestly** report his substance abuse and seek appropriate services to meaningfully address this issue. Court places Father on notice his failure to address this issue will likely result in a new termination petition being filed.

On November 18, the father had a sweat patch that was positive for methamphetamine. He denied using illegal drugs and did not complete any additional treatment for substance abuse. He was discharged from one provider because he needed a higher level of care. To his credit he began services at Powell treatment facility, but he only attended the first session. Contrary to the father's testimony, he was not discharged from Powell due to lack of insurance. He was discharged because he disengaged from those services.

The State filed a petition on December 16, seeking to terminate his parental rights. A termination hearing was held in February 2020. The court found the father continued to test positive for methamphetamine throughout the CINA case. The court terminated the father's parental rights under section 232.116(1)(h) (2019). The court concluded termination was in the child's best interests, stating the father's lack of meaningful participation in services showed an unwillingness

to make the changes necessary to have the child placed in his care.  The father now appeals the juvenile court's decision.

## II.      Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The State must prove its allegations for termination by clear and convincing evidence.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.*  Our primary concern is the best interests of the child.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.     Sufficiency of the Evidence

The father claims there is not sufficient evidence in the record to support termination of his parental rights under section 232.116(1)(h).  He asserts the State did not present clear and convincing evidence of the fourth element of subsection (h)—that the child could not be safely returned to his care.  He notes that on November 15, 2019, based on nearly identical evidence, the court determined his rights should not be terminated.  The father claims the positive sweat patch retrieved on November 18 was not sufficient to change this result.  He disputes the reliability of the sweat patch.

The father cites to *In re S.B.*, No. 19-1170, 2019 WL 4301591 (Iowa Ct. App. Sept. 11, 2019).  We quoted *United States v. Meyer*, 483 F.3d 865, 869 (8th Cir. 2007), as follows:

> That is not to say, of course, that positive sweat patch results are invariably a reliable indicator of drug usage.  There may well be certain instances where [persons testing positive] offer compelling

> reasons to believe that positive test results from sweat patches are erroneous. District courts should make such determinations on a case-by-case basis.

*S.B.*, 2019 WL 4301591, at *3 n.1. We stated, "We observe courts have found that sweat-patch tests are a generally reliable method for determining drug use." *Id.*; *see also In re A.W.*, No. 18-0382, 2018 WL 2084913, at *2 (Iowa Ct. App. May 2, 2018) ("Other courts have found that sweat-patch tests are a generally reliable method for determining drug use.").

In this case there are no compelling reasons to believe the positive sweat-patch results were erroneous. *See Meyer*, 483 F.3d at 869. The father tested positive for methamphetamine throughout the CINA proceedings. He also had a history of stating he had no idea how he had a positive drug test, only to later admit he had been using methamphetamine. We find the sweat-patch results were a reliable indicator that the father continued to use methamphetamine. The use of methamphetamine "can result in 'harmful effects' to the child." *See J.S.*, 846 N.W.2d at 37. We conclude there is clear and convincing evidence in the record to show the child could not be safely returned to the father's care. We determine the father's parental rights were properly terminated under section 232.116(1)(h).

## IV. Best Interests

The father contends that termination of his parental rights is not in the child's best interests. "When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (quoting Iowa Code § 232.116(2)). "It is well-settled law that

we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The father was given six additional months during the CINA proceedings to work on reunification. During the initial termination proceedings, the father's rights were not terminated because there were some signs of progress and hope for further improvement. However, by the time of the second termination hearing the father had failed to continue any progress and had faltered in substance-abuse treatment. We agree with the juvenile court's assessment that termination is in the child's best interests because the father's lack of meaningful participation in services showed an unwillingness to make the changes necessary to have the child placed in his care. The father's conduct showed he did not make the child a priority in his life.

As part of his best-interests argument, the father asserts his parental rights should not be terminated on the ground that termination would be detrimental to the child due to the closeness of the parent-child relationship, which is a reference to the exception found in section 232.116(3)(c). The factors "in section 232.116(3) are permissive, not mandatory." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). The juvenile court exercises its discretion in determining whether the factors in section 232.116(3) should be applied. *Id.*

The juvenile court found "there are no legal exceptions in Iowa Code section 232.116(3) which would argue against termination." We concur in the court's

conclusion. The evidence did not show termination would be detrimental to the child, and, in fact, termination is in the child's best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED.**